UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BEAUFORT BEE BROWN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**KILOLO KIJAKAZI,**<br>**Acting Commissioner of Social Security,**<br><br>**Defendant.** | No. 21-cv-2416-ZMF |

**MEMORANDUM OPINION**

Plaintiff Beaufort Bee Brown moves for reversal of Defendant Commissioner of the Social Security Administration's decision adopting the findings of an Administrative Law Judge and denying his application for Supplemental Security Income ("SSI"). *See* Mem. Supp. Pl.'s Mot. J. Rev. ("Pl.'s Mot."), ECF No. 19. Defendant Commissioner also moves for reversal of the decision and remand of the matter to the Commissioner for further administrative proceedings. *See* Def.'s Mot. Entry J. Remand Pursuant to Sentence Four of 42 U.S.C. § 405(G) ("Def.'s Mot."), ECF No. 20. Having considered the parties' submissions and the Administrative Record,[1] and for the reasons set forth below, the Court will GRANT Plaintiff's motion for a judgment of reversal and remand this matter to the Commissioner for further proceedings, and GRANT Defendant's motion for a judgment of reversal and remand.

---

[1] For ease of reference, citations to the Administrative Record will refer to the "AR" and cite to the consecutive page numbers provided in the lower right-hand corner of each page.

1

**I.    BACKGROUND**

    A.    <u>Statutory Framework</u>

The Social Security Act (the "Act") provides SSI for "disabled" individuals.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  The impairment must be severe and must render the individual unable to perform both "previous work" and "any other kind of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B); *see* 20 C.F.R. § 416.905.

The Social Security Administration ("SSA" or "Commissioner") uses a five-step sequential process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920(a)(4).  If a determination can be made at any step, the SSA does not go on to the next step.  *See id.*  The burden of proof is borne by the claimant at each of the first four steps and switches to the Commissioner at step five.  *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (citing 20 C.F.R. §§ 404.1520, 416.920).  At step one, the claimant must demonstrate he is not presently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  At step two, the claimant must show that he has a "severe" medically determinable impairment that "significantly limits [his] physical or mental ability to do basic work activities."  *Id.* §§ 416.920(a)(4)(ii), 416.920(c).  At step three, the claimant must show that his impairment—or combination of impairments— "meets or equals" the criteria of an impairment listed in the Commissioner's regulations.  *Id.* § 416.920(a)(4)(iii).  If the claimant's impairment does not meet or equal a listed impairment, the Commissioner proceeds to step four, which requires the Commissioner to determine the claimant's residual functional capacity ("RFC") and whether, in light of the RFC, the claimant can still

perform any relevant past work. *See id.* §§ 416.920(a)(4)(iv), 416.920(e)–(f). If the RFC indicates that the claimant cannot engage in past work, then at step five, the Administrative Law Judge looks to the claimant's RFC, age, education, and past work experience to determine if he can perform "other work" in the national economy. *Id.* §§ 416.920(a)(4)(v), 416.920(g).

  B. <u>Procedural Background</u>

On November 20, 2017, Mr. Brown filed an initial claim for SSI. *See* AR 9, 86. On January 18, 2018, Mr. Brown received a notice of denied claim for SSI. *See* AR 115–17. On January 29, 2018, Mr. Brown requested the reconsideration of his claim. *See* AR 118–20. On May 16, 2018, the SSA reaffirmed denial. *See* AR 121–23.

On June 26, 2018, Plaintiff requested a hearing. *See* AR 124–25. On September 5, 2019, ALJ Richard Furcolo ("the ALJ") held the hearing. *See* AR 39.

On September 24, 2019, the ALJ denied Mr. Brown's claim. *See* AR 21. On November 19, 2019, Mr. Brown requested a review of the ALJ's decision. *See* AR 5. On July 10, 2020, the SSA denied that request. *See* AR 1.

On May 9, 2022, Mr. Brown filed a Motion for Judgment of Reversal. *See* Pl.'s Mot. 21. On June 17, 2022, Defendant filed their Motion for Judgment of Remand. *See* Def.'s Mot. 3.

  C. <u>Factual Background</u>

Mr. Brown received a GED in 2001. *See* AR 19, 52. Mr. Brown previously worked as a fast-food worker, a truck unloader/overnight stocker, a grocery store cashier, and a produce clerk. *See* AR 19. Mr. Brown's alleged disability began on November 20, 2017 due to mental health, gout in both feet, bilateral knee pain, hand numbness, post-traumatic stress disorder ("PTSD"), a learning disorder, seizures, lower and middle back pain, migraines, high blood pressure, and high cholesterol. *See* AR 15, 86–87.

Many doctors evaluated Mr. Brown. *See* AR 240–499. Dr. Raymond J. Brown has treated Mr. Brown for PTSD since October 5, 2017. *See* AR 242. Dr. Brown stated that Plaintiff was "likely to have absenteeism, likely to have difficulty with persistence, [and] likely to cause disruption due to angry outbursts." AR 242.

On January 15, 2018, following an order from the State Agency,[2] Dr. Jennifer Christman conducted a psychological and intellectual evaluation of Mr. Brown. *See* AR 341. Mr. Brown's mental health symptoms included dysphoric moods, irritability, social withdrawal, exaggerated startle response, nightmares, avoidant behaviors, intrusive thoughts, angry outbursts, detachment from others, auditory hallucinations, and short-term and long-term memory deficits. *See* AR 341–42. Moreover, Dr. Christman reported Mr. Brown's results on the Wechsler Adult Intelligence Scale – Fourth Edition, which provided an estimate of Mr. Brown's "current functioning." AR 344. Mr. Brown's Verbal Comprehension Index Score was 61 (0.5th percentile), Perceptual Reasoning Index Score was 63 (1st percentile), Working Memory Index Score was 66 (1st percentile), Processing Speed Index Score was 65 (1st percentile), and his Full Scale IQ was 57 (0.2nd percentile). *See* AR 345. Dr. Christman diagnosed Mr. Brown with mild intellectual disability, PTSD, unspecified schizophrenia spectrum and other psychotic disorder, and other specified personality disorder-antisocial traits, among other diagnoses. *See* AR 346. Dr. Christman also found that Mr. Brown has a "moderate limitation in his ability to understand, remember, or apply complex directions and instructions and sustain concentration and perform a task at a consistent pace." AR 346. Dr. Christman concluded that "[t]he results of the present

---

[2] State agencies make initial and reconsideration determinations of disability for the Commissioner for individuals living in the state. *See* 20 C.F.R. §§ 416.903, 404.1503. These agencies are under contract to the SSA and operate in accordance with the rules, regulations, and standards promulgated by the SSA. *See* 42 U.S.C. § 421(a)(2).

4

evaluation appear to be that [Mr. Brown] is experiencing psychiatric and cognitive problems that may significantly interfere with [his] ability to function on a daily basis." AR 346.

On January 18, 2018, the State Agency found that Plaintiff had severe mental impairments. *See* AR 90, 98. The report asserted that Mr. Brown was limited to managing simple instructions, simple tasks, and simple work-related decisions. *See* AR 94–95. On May 15, 2018, the State Agency affirmed these findings at the reconsideration level. *See* AR 109–11.

D. The ALJ's Decision

At step one, the ALJ determined that Mr. Brown had not engaged in substantial gainful activity since the alleged disability onset date. *See* AR 11. At step two, the ALJ determined that Mr. Brown had the following severe impairments: dysfunction of major joints, epilepsy, neurocognitive disorder, depressive disorder, personality disorder, neurodevelopmental disorder, trauma-related disorder, inflammatory arthritis, and obesity. *See* AR 11 (citing 20 C.F.R. § 416.920(c)). The ALJ acknowledged that the record contained evidence of hypertension and sleep apnea but found that these conditions "did not result in more than a minimal limitation in the claimant's ability to perform basic work activities." AR 11.

At step three, the ALJ determined that Mr. Brown did not have an impairment or combination of impairments that met the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* AR 12. The ALJ considered Listings 11.02 (epilepsy), 14.09 (inflammatory arthritis), and 1.02 (major dysfunction of a joint(s)) as well as Listings 12.02, 12.04, 12.08, 12.11, and 12.15 (mental impairments). *See* AR 12–14.

At step four, the ALJ determined that Mr. Brown had the RFC to perform light work with the following limitations: should not frequently climb stairs, balance, stoop, kneel, crouch, and crawl; should never climb ladders; should avoid even moderate exposure to hazards; should avoid

concentrated exposure to extreme cold, extreme heat, and pulmonary irritants; could perform simple, routine, repetitive tasks; and, occasionally interact with supervisors and the general public. *See* AR 14.  Through the two-step process, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 15.  Moreover, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of Plaintiff's symptoms were inconsistent because the medical records suggested they were not disabling. *See* AR 15–19.  The ALJ also found that Mr. Brown was unable to perform any past relevant work. *See* AR 19.

Finally, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Mr. Brown could perform. *See* AR 19.  In reaching this conclusion, the ALJ relied on the testimony of vocational expert Dr. James Michael Ryan. *See* AR 19–20, 70.  The vocational expert testified that an individual with Plaintiff's characteristics could perform the requirements of representative occupations such as (i) bakery worker, (ii) grading/sorting worker, and (iii) bench worker. *See* AR 19–20, 70, 80–81.

## II.   LEGAL STANDARD

When reviewing the Commissioner's disability determination, a district court must uphold the decision "if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987) (citing *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  This standard "requires more than a scintilla, but can be satisfied by

6

something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. U.S. Fed. Energy Regul. Comm'n*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. U.S. Fed. Energy Regul. Comm'n*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)).

"Substantial-evidence review is highly deferential to the agency fact-finder." *Rosello ex rel. Rosello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). "An ALJ's credibility determinations, in particular, 'are entitled to great deference' and may only be overturned under 'extraordinary' circumstances." *Harrison Cnty. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 790 Fed. App'x 210, 212 (D.C. Cir. 2019) (quoting *Sec'y of Lab. v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1107 (D.C. Cir. 1998)). "The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment 'concerning the credibility of the evidence with its own.'" *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (quoting *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995)). But this deference requires that the ALJ build a "logical bridge" between the evidence and his conclusions so that this Court may "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

On review, the "plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-cv-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)). If a court finds that the ALJ applied the correct legal standards and met the substantial evidence threshold, the court may grant the Commissioner's motion for an affirmance. *See, e.g.*, *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010). If a court finds error in an ALJ's determination that a claimant was not disabled, it may

reverse and remand, requiring the SSA to conduct further proceedings consistent with the law. *See, e.g.*, *Jackson v. Barnhart*, 271 F. Supp. 2d. 30, 38 (D.D.C. 2002).

**III.   ANALYSIS**

    A.   Joint Request for Remand

Mr. Brown challenges the ALJ's decision on four grounds: (1) in general, the ALJ erred by failing to properly evaluate Plaintiff's intellectual disability;[3] (2) at step two, the ALJ failed to offer any rationale as to whether Plaintiff's intellectual disability constituted a "severe" impairment; (3) at step three, the ALJ failed to evaluate whether Plaintiff met or medically equaled Listing 12.05; and (4) at step four, the ALJ omitted limitations related to Plaintiff's intellectual disability from the RFC. *See* Pl.'s Mot. 1.

Defendant requests that the Court enter a judgment that reverses the final decision of the Commissioner and remands the case to the Commissioner for further administrative proceedings. *See* Def.'s Mot. 1.

    B.   Issues for Consideration on Remand

First, the ALJ failed to consider whether Plaintiff's intellectual disability was a medically determinable and/or severe impairment at step two. *See* AR 11–19. When summarizing the opinion of Dr. Christman, the ALJ acknowledged Plaintiff's IQ of 57 and the diagnosis of mild intellectual disability. *See* AR 16. However, the ALJ said that Dr. Christman's opinion was only "moderately persuasive" as it was "partially consistent with the objective evidence." AR 18. Yet, even with this caveat, the ALJ implicitly accepted Dr. Christman's opinion to a degree. The ALJ

---

[3] At the hearing, Plaintiff was pro se and suffering from a mental illness. *See* AR 9, 16. An ALJ has a "duty to investigate fully all matters at issue and to develop the comprehensive record requisite for a fair determination of disability." *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987). This duty is heightened in instances where the plaintiff is both unrepresented and suffering from a mental illness. *See id.* at 870–71.

failed to "build an 'accurate and logical bridge'" between the evidence of Plaintiff's intellectual disability and the ALJ's finding that such diagnosis was not severe. *Lane-Rauth*, 437 F. Supp. 2d at 67 (quoting *Scott*, 297 F.3d at 595). Remand is the appropriate remedy for such error. *Lane-Rauth*, 437 F. Supp. 2d at 68–69. The Defendant concedes this. *See* Def.'s Mot. at 1–2.

Second, the ALJ failed to consider all three prongs of Listing 12.05B (Intellectual Disorder) at step three. *See* AR 12–14. Listing 12.05B(1) is satisfied by a "[s]ignificantly subaverage general intellectual functioning evidenced by . . . [an] IQ score of 70 or below on an individually administered standardized test of general intelligence." 20 C.F.R., Part 404, Subpt. P., App'x. 1, § 12.05B(1). Plaintiff's IQ of 57 meets this criterion. *See id.*

Listing 12.05B(2) necessitates "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (a) [u]nderstand, remember, or apply information . . . ; or (b) [i]nteract with others . . . ; or (c) [c]oncentrate, persist, or maintain pace; or (d) [a]dapt or manage oneself." *Id.* § 12.05B(2). The ALJ must use a five-point rating system, ranging from "none" to "extreme," to assess the claimant's limitations in each of these areas. *Id.* § 12.00F. The ALJ made no conclusions for Listing 12.05B(2), which foreclosed the ALJ from finding a moderate limitation.[4] *See* AR 9–21. Indeed, Plaintiff provided evidence to warrant a finding of limitation in this area. *See* AR 345–46.

Listing 12.05B(3) necessitates "evidence about [the claimant's] current intellectual and adaptive functioning and about the history of [the claimant's] disorder [that] demonstrates or supports the conclusion that the disorder began prior to [the claimant's] attainment of age 22." 20

---

[4] However, the ALJ appropriately concluded that Plaintiff has a "moderate limitation" for all other Listings he considered related to Plaintiff's mental impairments (Listings 12.02, 12.04, 12.08, 12.11, and 12.15). AR 13–14.

C.F.R., Part 404, Subpt. P., App'x. 1, § 12.05B(3).  Plaintiff appears to have facts to support this showing, although these facts were not part of the record.  For example, while Plaintiff was in school, he was in a special education program for a learning disability.  *See* AR 341.  Plaintiff dropped out of school during the 9th grade, which is well before the age of 22.  *See* AR 341.  Because the ALJ owed Plaintiff a heightened duty to inquire, the ALJ was obligated to build a record of Plaintiff's complete medical history.  *See supra* n.3; *see also Poulin*, 817 F.2d at 871–73.  This included obtaining Plaintiff's educational records or other records that may have provided evidence regarding intellectual disability prior to age 22.  But the ALJ failed to do that.  *See* Pl.'s Mot. 18–19.

Third, the ALJ failed to fully account for Plaintiff's intellectual disability in the RFC finding.  *See* AR 14–19.  In turn, Plaintiff's inability to perform even simple tasks with the sustained persistence and pace needed to perform sustained full-time work was not adequately considered by the vocational expert.  *See* AR 19–20, 79–83; *Butler*, 353 F.3d at 1005–06.  This failure was not harmless.  *See Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989).  When the RFC and concomitant hypothetical presented to the vocational expert do not accurately describe the claimant's limitations, such deficiencies "undermine the foundation for the expert's ultimate conclusion that there are alternative jobs [the claimant] can [perform]."  *Id.*

## IV. CONCLUSION

Ultimately, the combined effect of these errors is a step five finding that is contrary to law and not supported by substantial evidence. *See Butler*, 353 F.3d at 1005–06. Therefore, as set out in an accompanying order, Plaintiff's Motion for a Judgment of Reversal and Remand and Defendant's Motion for a Judgment of Reversal and Remand will be granted. This matter is remanded to the Commissioner for further proceedings consistent with this opinion.

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE